[No. 2060.  Decided January 9, 1896.]

A. PETROS, *Appellant,* v. THE CITY OF VANCOUVER *et al., Respondents.*

MUNICIPAL CORPORATIONS — AUTHORIZATION OF INDEBTEDNESS — SUBMISSION TO VOTERS.

The submission by a city for ratification by its electors in one proposition of the question of borrowing money for the improvement of its electric light plant, and also for general municipal purposes, will not preclude it from deducting the amount applied for lighting purposes, and again submitting to its electors a proposition for the funding of its general municipal indebtedness, when it is authorized to incur indebtedness by popular vote for general municipal purposes to the extent of five per cent. of the assessed valuation of its property, and a further indebtedness to the extent of an additional five per cent. of valuation for the purpose of light and water plants.

Appeal from Superior Court, Clarke County.—Hon. A. L. MILLER, Judge.  Affirmed.

*C. D. Bowles,* for appellant.

*Moody, Coovert & Stapleton,* for respondents.

The opinion of the court was delivered by

Hoyt, C. J.—On the 3d of November, 1890, the common council of the city of Vancouver passed an ordinance submitting to the voters therein the question of borrowing $55,000 by the city for municipal purposes. The proposition was approved by the requisite majority of the voters, and thereafter the common council issued fifty-five negotiable coupon bonds of the denomination of $1,000, all of which were sold and are now outstanding obligations of said city. Thereafter, there was submitted to the voters of said city the question of legalizing its indebtedness to the amount of something over $23,000. The proposition was indorsed at the election called for that purpose, and thereafter the common council adopted a resolution authorizing the issue of bonds to the amount of $20,000 for funding the indebtedness so legalized. Under the resolution so adopted, and by virtue of the provisions of the act "to authorize counties, cities and towns to issue bonds to fund outstanding indebtedness, and providing for the levy and collection of a specific tax to pay the principal and interest of such bonds and declaring an emergency" (Laws 1895, p. 465), bids for said bonds were requested, and that of the defendants Morris & Whitehead accepted, and the right to purchase said bonds accorded to them, and the officials of said city were about to execute and deliver the bonds so contracted to be sold, to prevent which this action was instituted to have the defendants enjoined from further proceeding in the matter of the sale of said bonds.

The ground upon which such injunction was sought was that the indebtedness which was to be funded by the issue of the bonds was not a part of the legal indebtedness of the city of Vancouver, and the founda-

tion of this claim was that the vote by which it was sought to validate it was of no effect for the reason that such indebtedness, with that already outstanding, was more than five per cent. of the assessed valuation of the city for the preceding year.

From the figures set out in the complaint it appeared that if the entire amount of the $55,000 represented by the first issue of bonds was a part of the five per cent. of indebtedness which the city was authorized to incur for ordinary city purposes, the $23,000 of indebtedness sought to be legalized would, when taken with the other outstanding indebtedness, amount to more than five per cent. of the assessed valuation of the city, and for that reason would not be capable of validation by a vote of the people.    It, however, was made to appear that of the $55,000 procured by the sale of the first issue of bonds, about $30,000 was expended in improving the electric light plant of the city, and about $8,000 was used in the construction of a sewerage system, and it was contended on the part of the respondents that on this account only about $17,000 of the indebtedness represented by said bonds was a part of the five per cent. of indebtedness which the city was authorized to incur for general municipal purposes, and that the $38,000 constituted a part of the five per cent. of indebtedness which could be incurred for the purchase or construction of a light plant and for sewerage purposes.

The ordinance submitting to the people the question as to whether or not the first bond issue should be made, provided that, " Whereas it is necessary, for the purpose of enlarging the electric light plant of the city and for the construction of a suitable building therefor and for a city hall and city offices and for the purchase of new and additional apparatus for the

fire department of the city, to borrow money in addition to the amount necessary to fund the said general indebtedness; and whereas it is necessary for these purposes that the city should borrow the sum of $55,-000," etc.   From this it will be seen that the proposition upon which the people were called upon to vote contemplated the issue of bonds for the purpose of enlarging the light plant of the city, as well as for general municipal purposes, and if the form of the submission was such that its ratification authorized the issue of bonds for that purpose, it would follow that $30,000 of the $55,000 should be charged against the five per cent. indebtedness authorized to be incurred for a light plant; and it is conceded that if such amount is so charged the amount of indebtedness sought to be validated would not, when added to the indebtedness already outstanding for ordinary municipal purposes, exceed the five per cent. authorized by law.

But, it is contended on the part of appellant that it was not competent for the common council to submit the question of the issuance of bonds for light purposes in connection with an issue for ordinary municipal purposes, and that for that reason the $30,000 issued in pursuance of the proceedings had for that purpose, although applied to the improvement of the electric light plant, constituted a part of the indebtedness for ordinary municipal purposes.   But such was not the effect of such submission.   If it was sufficient to authorize the issue of the bonds so that they became a charge against the city, it was for the reason that the objects for which they were to be issued were so expressed in the proposition submitted that authority to issue was conferred, and the improvement of the light plant of the city was as clearly set out in the

proposition submitted as an object to be accomplished, as was any other. All objects were included in the proposition, and if the submission was of any force whatever, it authorized the issuance of bonds in the discretion of the common council in such amounts for each purpose as it should thereafter determine to be for the interests of the city, and as it was thereafter determined that $30,000 of such amount should be applied to the improvement of the electric light plant of the city, that amount would constitute a portion of the indebtedness authorized to be incurred for that purpose, and would constitute no part of the five per cent. authorized to be incurred for general purposes. If, on the other hand, it was beyond the power of the common council to submit as one proposition the question of incurring indebtedness, a portion of which should be chargeable to each class of indebtedness authorized to be incurred, the submission was without force and the bonds issued in pursuance thereof were invalid, and for that reason constituted no part of the indebtedness of the city; in which event there was nothing to prevent the validation of the indebtedness to fund which the bonds in question were to be issued.

It follows that, whatever may have been the force of the authorization procured from the people by the ratification of the proposition to issue the first $55,-000 of bonds, there was no legal objection to the validation of the indebtedness for which the bonds in question were sought to be issued. For that reason the denial by the trial court of any relief to appellant was required by the facts shown, and its judgment in the premises must be affirmed.

DUNBAR, ANDERS, SCOTT and GORDON, JJ., concur.